UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MURIELLE ABDALLAH, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                    Plaintiff,<br><br>v.<br><br>BAIN CAPITAL LLC,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)       Civil Action No. 1:11-CV-11904-JLT<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF DEFENDANT BAIN CAPITAL, LLC'S <u>MOTION TO DISMISS</u>

Murielle Abdallah, a French citizen, lost her job at a Samsonite luggage factory in Henin-Beaumont France when it was liquidated in a French bankruptcy proceeding in February 2007. For this, she sues Bain Capital, LLC, in this Court.  Her claim?  That as a former *shareholder* of Samsonite, Bain Capital somehow orchestrated the sale of Samsonite's factory to avoid Samsonite's obligation to provide French severance benefits to her and other factory workers. The Court should dismiss this action for multiple independent reasons.

First, Abdallah filed suit more than four years after her termination, and her claims are barred by the applicable statutes of limitation.  Second, Abdallah failed to plead facts sufficient to hold Bain Capital liable for the allegedly tortious acts of Samsonite and the company to whom Samsonite sold the factory.  Finally, Abdallah fails to state a claim against Bain Capital under Mass. Gen. Laws Ch. 93A because the events at issue occurred in France.  Accordingly, the Court should dismiss Abdallah's case with prejudice.

# I.      BACKGROUND[1]

Abdallah, a French citizen, Complaint ("Compl.") ¶ 2(a), was employed by Samsonite at its luggage factory in Henin-Beaumont, France (the "Factory").  Id. ¶¶ 1, 5, 16.  In 2004, a pool of investors, including Bain Capital, purchased a majority of Samsonite's outstanding shares of stock.  Compl. ¶ 19.  At the time, the Factory was operating at 50% of its capacity.  Id. ¶ 27.

The following year, "Samsonite presented the representatives of the [F]actory's employees with a takeover plan promoted by" a company called HB Group.[2]  Compl. ¶ 28.  The employees in turn hired an accounting firm to audit the plan.  Id. ¶ 33.  Although the auditors raised a number of potential concerns about the proposal, the employees ultimately did not oppose the transaction.  Id. ¶¶ 33-37.  As a result, Samsonite transferred the Factory (including the employees who worked there) to a newly-created, and wholly-owned, subsidiary.  Id. ¶ 38.  The subsidiary then sold the Factory to HB Group in the summer of 2005.  Id. ¶ 45.

Following the sale, the Factory continued to generate insufficient revenue.  Compl. ¶¶ 51-52.  As a result, it filed for bankruptcy in 2006.  Id. ¶ 53.  In February 2007, a French court ordered the liquidation of the Factory, resulting in the termination of all the employees who worked there, including Abdallah.  Id. ¶¶ 1, 5, 13, 53.

The Factory workers subsequently filed suit in a French court against Samsonite, HB Group, Bain Capital, and the other shareholders of Samsonite.  Compl. ¶ 57.  They sought a declaration that the transfer of the Factory from Samsonite to HB Group was a fraud intended to excuse Samsonite from having to implement a "collective redundancy plan" after the closure of the Factory.  Id. ¶¶ 22, 57-58.  According to Abdallah, French law requires that certain employers who seek to terminate ten or more employees must implement a collective

---

[1] Bain Capital assumes, for purposes of its motion to dismiss only, that the factual allegations set forth in the Complaint are true.

[2] According to the Complaint, under French law, a company like Samsonite that seeks to transfer part of its operations to another entity "must consult the employees' representatives on the planned takeover."  Compl. ¶ 32. It is unclear from the Complaint whether Abdallah was one of those representatives.

redundancy plan which contains "a number of financial provisions designed to assist the workers facing termination." Id. ¶¶ 22-26.

On June 24, 2008, the Tribunal de Grande Instance in France "found in favor of the workers, and declared the transfer between Samsonite and HB Group null and void as fraudulent." Compl. ¶ 58.  The Tribunal dismissed the claims against Bain Capital and the other shareholders, however, "for lack of evidence." Id.

The Factory workers also filed a separate suit in a different French court against Samsonite, alleging that Samsonite continued to be their employer, even after the transfer of the Factory to HB Group.  Compl. ¶ 59.  In a decision dated December 14, 2008, the French court ruled in favor of the employees and awarded them damages against Samsonite.  Id. ¶ 60.

Now, more than four years after her termination, and three years after failing in her case against Bain Capital in the French courts, Abdallah is trying to sue Bain Capital again here.  To that end, she alleges that her employment was terminated, and that she failed to receive the benefits of a collective redundancy plan under French law, because Bain Capital "controlled" Samsonite and therefore is liable for its actions.  Apparently seeking French statutory remedies in this Court, Abdallah asserts claims (on behalf of herself and a putative class of French workers) against Bain Capital for fraud, "tortious interference with employment agreements," violation of Mass. Gen. Laws ch. 93A, and unjust enrichment.

Putting to one side the considerable forum and jurisdictional hurdles to this action,[3] Abdallah's claims are barred by the applicable statutes of limitation.  Moreover, even if

---

[3] Given that the events relevant to Abdallah's claims took place in France, the principal witnesses are French citizens and/or reside in France, and that the relevant documents likely are written in French, this case raises significant forum *non conveniens* concerns.  Further, the fact that Abdallah previously litigated the same issues in the French court system raises serious *res judicata* concerns as well.  Although it is not possible to address all of these concerns in the context of this motion, if the Court would find it useful to see the previous decisions issued by the French courts regarding this matter, Bain Capital would be pleased to provide them to the Court.

everything Abdallah alleges in her Complaint is true, and her case was timely, she fails to state a claim against Bain as a matter of law.

## II.      STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (discussing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (internal punctuation omitted).  In reviewing the sufficiency of a complaint, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.  See Ocasio-Hernandez v. Fortuno-Burset, 640 F. 3d 1, 10 (1st Cir. 2011) ("Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth.").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S.Ct. at 1949.  See Karvelas v. Melrose-Wakefield Hosp., 360 F. 3d 220, 240 (1st Cir. 2004) (holding that a complaint must "allege a factual predicate concrete enough to warrant further proceedings" including "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.").  Complaints containing mere "bald assertions" or "unsupportable conclusions" cannot withstand dismissal.  Karvelas, 360 F. 3d at 224.  Because Abdallah's claims against Bain Capital fail to satisfy this standard, the Court should dismiss them.

## III.     DISCUSSION

### A.      Abdallah's Claims Are Barred By The Applicable Statutes Of Limitation

Abdallah's common law claims for fraud, "tortious interference with employment agreements," and unjust enrichment are governed by the three year statute of limitations for tort claims in Massachusetts.  See Mass. Gen. Laws ch. 260, § 2A; Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 448 F. Supp. 2d 244, 262 (D. Mass. 2006)

(holding that a claim for unjust enrichment that is not premised on an alleged breach of contract is subject to the limitations period in Mass. Gen. Laws ch. 260, § 2A). Her claim under Mass. Gen. Laws ch. 93A, § 1 et seq. ("Chapter 93A") is governed by a four year statute of limitations. See Mass. Gen. Laws ch. 260, § 5A. Because Abdallah's claims plainly accrued more than four years before she filed this lawsuit, they are barred by the statutes of limitation.

A cause of action accrues at the moment when a plaintiff is injured. Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991); Joseph A. Fortin Constr., Inc. v. Mass. Housing Finance Agency, 392 Mass. 440, 442 (1984) ("it is a well-settled rule that causes of action in tort generally accrue under G.L. c. 260, § 2A, at the time the plaintiff is injured"); Stark v. Advanced Magnetics, Inc., 50 Mass. App. Ct. 226, 232 (2000) ("In tort actions and actions for violation of G.L. c. 93A, the cause of action accrues at the time the plaintiff is injured."). "One need not apprehend the full extent or nature of an injury in order for a cause of action to accrue." Riley v. Presnell, 409 Mass. 239, 243 (1991). Moreover, if a plaintiff has notice of possible harm, the applicable statutes of limitation begin to run even if the plaintiff does not know the identity of the defendant who allegedly caused the harm. Krasnow v. Allen, 29 Mass. App. Ct. 562, 569-70 (1990) (holding that claims accrue even if the plaintiff does not know the identity of the particular defendant claimed to be responsible for the harm). See also, e.g., Gauthier v. United States, 2011 U.S. Dist. LEXIS 99246, at *11 (D. Mass. Sept. 2, 2011) (Saylor, J.) (holding that plaintiff's causes of action accrued even though she was unable to "discover the identity of certain defendants until later").

In this case, Abdallah's claims accrued when her employment terminated in February 2007. See Compl. ¶ 1, 5, 13, 53. At that point, according to her own allegations, Abdallah was harmed in two ways: she lost her job and she did not receive the benefits of a collective redundancy plan. See id. ¶¶ 5, 7, 13, 65, 74, 80. Because Abdallah did not file her Complaint in

this Court until November 4, 2011, more than four years after her termination in February 2007, all of her claims are time barred.   Therefore, the Court should grant Bain Capital's motion to dismiss.

### 1.      Abdallah cannot toll the statutes of limitation.

To avoid the statute of limitations barrier to her claims, Abdallah seeks to toll their running by alleging that "new evidence" came to light earlier this year which suggests that Bain Capital was involved in the transfer of the Factory from Samsonite to the HB Group.   See Compl. ¶¶ 29, 58, 71.   Specifically, Abdallah alleges that Patrick Lebreton, "a high-ranking executive of" Bain Capital, attended "every important meeting" between Samsonite and the head of the HB Group, Jean- Jacques Aurel, regarding the proposed transaction.   Id. ¶ 29.   According to the Complaint, Samonsite's representative "repeatedly sought Lebreton's assent to the main points of the" proposed transfer of the Factory.   Id. ¶ 29.

Through these allegations, Abdallah attempts to invoke the so-called "discovery rule" which "operates to toll a limitations period until a prospective plaintiff learns or should have learned that he has been injured."   Albrecht v. Clifford, 436 Mass. 706, 714 (2002).   Even if everything Abdallah alleges is true, however, the discovery rule does not apply here because Abdallah knew that she had been injured as of her termination in February 2007.   See Tagliente, 949 F.2d at 4 ("In order for the statute of limitations to be tolled pursuant to the discovery rule, the factual basis for the cause of action must have been inherently unknowable at the time of the injury.") (internal punctuation  omitted); Bowen v. Eli Lilly  & Co., 408 Mass. 204, 207 (1990); Stark, 50 Mass. App. Ct. at 234 ("The statute of limitations, however, is not tolled if the plaintiff has actual knowledge of the facts giving rise to his cause of action.").

Abdallah's claim that she only recently learned the extent of Bain Capital's involvement in the transactions that led to the transfer of the Factory, which in turn allegedly led two years

later to its liquidation, is beside the point. See Krasnow, 29 Mass. App. Ct. at 569-70 (holding that causes of action begin accruing even if the plaintiff does not know the identity of the particular defendant claimed to be responsible for the harm); Gauthier, 2011 U.S. Dist. LEXIS 99246, at *11 (holding that plaintiff's causes of action accrued even though she was unable to "discover the identity of certain defendants until later"); D.B. Zwirn Special Opportunities Fund L.P. v. Mehrotra, 2011 U.S. Dist. LEXIS 8972, at *4 (D. Mass. Jan. 31, 2011) (Zobel, J.) (rejecting plaintiff's argument that the statute of limitations was tolled until plaintiff learned that the defendant was involved in the alleged fraud).

In any event, as evidenced by the Factory workers' decision to sue Bain Capital in a French court *more than three years ago*, Abdallah clearly had reason to believe that Bain Capital's alleged actions may have contributed to her injury. See, e.g., Schwartz v. Indep. Appraisals, LLC, 2011 U.S. Dist LEXIS 132891, at *15-16 (D. Mass. Nov. 17, 2011) (Stearns, J.) (holding that plaintiff's issuance of a demand letter is evidence that she was aware that she had suffered an actual injury, thereby rendering the discovery rule inapplicable). Thus, there is no reason why Abdallah could not have brought this suit against Bain Capital within the applicable limitations periods. Accordingly, Abdallah may not seek refuge in the discovery rule and the Court should dismiss her claims.

## B.    Abdallah Failed To Plead Facts Sufficient To Hold Bain Capital Liable For The Alleged Acts Of Samsonite And HB Group

Even if Abdallah's claims were not time barred, she still fails to state a claim against Bain Capital. Abdallah does **not** allege that Bain Capital itself committed any tortious acts against her. Instead, she contends that Bain Capital controlled Samsonite and HB Group and therefore must be held liable for the actions of those companies. It is well established that a shareholder of a corporation is not the employer of the corporation's employees. See, e.g., Meyer v. Holley, 537 U.S. 280, 286 (2003). Because Abdallah fails to plead facts sufficient to hold Bain Capital,

a shareholder, liable for the alleged acts of Samsonite and HB Group, the Court should dismiss all of her claims. See Zimmerman v. Puccio, 613 F.3d 60, 73-74 (1st Cir. 2010) ("corporations – notwithstanding relationships between or among them – ordinarily are regarded as separate and distinct entities" (quoting Scott v. NG U.S. 1, Inc., 450 Mass. 760, 766 (2008)); Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 128-30 (1st Cir. 2006) (affirming the district court's decision to grant a motion to dismiss because the plaintiff failed to allege facts that would support piercing the corporate veil). Just because Bain Capital may have been a vigilant shareholder does not mean – and it certainly is not alleged – that Bain Capital made managerial decisions or exercised control so as to render it an employer.

Courts should pierce the corporate veil only in those rare situations where one entity exercises "pervasive control" over the activities of another entity and there is some fraudulent or injurious consequences of the intercorporate relationship. Scott, 450 Mass. at 769 (quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968)). See Birbara v. Locke, 99 F.3d 1233, 1239 (1st Cir. 1996) ("the corporate veil will only be pierced in rare situations"). In evaluating whether to "disregard settled expectations accompanying corporate form" and pierce the corporate veil, courts consider the following factors:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

Scott, 450 Mass. at 768. See AG v. M.C.K., Inc., 432 Mass. 546, 555 n. 19 (2000).

Abdallah failed to plead the existence of any such facts with regard to Bain Capital's relationship with Samsonite or HB Group. To be sure, Abdallah alleges that Bain Capital

"dominated the management of Samsonite," Compl. ¶ 7(a), but that is precisely the sort of conclusory allegation that the Court must disregard for purposes of a motion to dismiss. See Ocasio-Hernandez, 640 F.3d at 12.

The only factual allegations supporting Abdallah's claim that Bain Capital exercised pervasive control over Samsonite are that (a) Bain Capital appointed Marcello Botolli as CEO of Samsonite shortly after it acquired the company in 2004, Compl. ¶ 21, and (b) Lebreton, a Bain Capital executive, attended meetings between Samsonite and HB Group at which Samsonite "sought Lebreton's assent to the main points" of the proposed transfer of the Factory, id. ¶ 29. This plainly is insufficient to support the extraordinary remedy of veil piercing. See Platten, 437 F.3d at 128-29; Scott, 450 Mass. at 768 ("control, even pervasive control, without more, is not a sufficient basis for a court to ignore corporate formalities" and pierce the veil); My Bread Baking Co., 353 Mass. at 619 ("common ownership of the stock of two or more corporations together with common management, standing alone, will not give rise to liability on the part of one corporation for the acts of another corporation").

What is more, Abdallah does not allege any facts suggesting that Bain Capital exercised any control over HB Group during the two years **after** it acquired the Factory. See Scott, 450 Mass. at 767 ("corporate veils are pierced . . . only when an agency or similar relationship exists between the entities" (quoting My Bread Baking Co., 353 Mass. at 619-20)(internal punctuation omitted)). And it was only after Samsonite sold the Factory to HB Group that Abdallah lost her job. Thus, her failure to plead facts to show that Bain Capital should be held liable for HB Group's actions after it acquired the Factory, and more specifically that Bain Capital somehow participated in managing the Factory into bankruptcy, warrants dismissal of her claims. Id. at 770. See Lily Transp. Corp. v. Royal Inst. Servs., Inc., 64 Mass. App. Ct. 179, 188 (2005)

("Stockholders who are not involved in the improper transaction or wrongdoing are not liable even when the corporate veil is pierced.").

### C. Abdallah's Claims Should Be Dismissed Because She Failed To Plead Fraud With Particularity

At the core of each of Abdallah's claims are her allegations that Bain Capital, acting through Samsonite, defrauded the Factory workers by misrepresenting to them that the transfer of the Factory from Samsonite to HB Group would result in the creation of a viable business. Accordingly, all of her claims are subject to the heightened pleading requirements of Rule 9(b). See Watkins v. Omni Life Sci., Inc., 692 F. Supp. 2d 170, 177 (D. Mass. 2010) ("any claim sounding in fraud must satisfy the requirements of the heightened pleadings standard regardless of what label the pleader assigns to it").  Therefore, Abdallah must plead "the time, place, and content of the alleged false or fraudulent representations." Arruda v. Sears, Robebuck &Co., 310 F.3d 13, 19 (1st Cir. 2002) (internal citation and punctuation omitted).  She also must plead "specific facts that make it reasonable to believe that [Bain Capital] knew that a statement was materially false or misleading." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009) (internal citation and punctuation omitted).  Because she has not done so, the Court should dismiss her claims.

Abdallah alleges that Samsonite, in an attempt to persuade the Factory workers to support the transfer of the Factory to HB Group, presented them with a "one-page business plan containing several inaccuracies." Compl. ¶ 33.  According to the Complaint, after the workers' accountant raised concerns about the plan, "the prospective acquirers raised high expectations amongst the personnel of the factory by giving assurances as to the safety of their employment, which made it extremely difficult for the employee's representatives to oppose the takeover plan." Id. ¶¶ 37, 64-65.

Abdallah, however, fails to state when those statements were made, where they were made, or who made them.[4]  See Arruda, 310 F.3d at 19.  She also fails to identify the specific statements at issue.  See id.  Instead, she refers only to "inaccuracies" in the proposed business plan and unspecified "assurances" about the workers' continued employment.  See Compl. ¶¶ 37, 64-65.  Further, Abdallah offers no factual allegations to support her **conclusion** that Bain Capital even knew of these statements, never mind that it knew them to be false at the time they were made.[5]  See, e.g., id. ¶ 64; N. Am. Catholic Educ. Programming Found., Inc., 567 F.3d at 13.  Because Abdallah failed to satisfy the requirements of Rule 9(b), the Court should dismiss all of her claims.

### D.    Abdallah Cannot State A Claim Against Bain Capital Under Chapter 93A As A Matter Of Law

In Count III, Abdallah alleges that Bain Capital violated Chapter 93A by arranging for the transfer of the Factory from Samsonite to HB Group so that Abdallah and the other Factory workers could be terminated without receiving the benefits of a collective redundancy plan.  See Compl. ¶¶ 75-81.  Even if these allegations are true, Abdallah fails to state a claim under Chapter 93A as a matter of law.

First, Chapter 93A applies only where "the center of gravity of the circumstances that gave rise to the claim is primarily and substantially within the Commonwealth."  Kuwaiti Danish Computer Co. v. Digital Equip. Co., 438 Mass. 459, 473 (2003) (interpreting Mass. Gen. Laws

---

[4]  In some paragraphs of the Complaint, Abdallah alleges that the allegedly fraudulent statements were made to "the employees' representatives," Compl. ¶¶ 32-33, whereas in other paragraphs she refers to "personnel of the factory," id. ¶ 37.  She does not appear to specifically allege that she herself actually heard these statements.  See, e.g., id. ¶ 64 (alleging that "Bain made a series of false representations" without identifying what was said or to whom they were made).  Thus, she has not pled a factual predicate for her claim that she "relied upon these representations as true."  Id. ¶ 65.

[5]  To the extent Abdallah's claims are based on Samsonite's opinions or estimates about the future success of the Factory after its sale to HB Group, such statements may not form the basis of a fraud claim.  See, e.g., Pepsi-Cola Metropolitan Bottling Co. v. Pleasure Island, Inc., 345 F.2d 617, 622 (1st Cir. Mass. 1965) ("statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable"); Hallmark Inst. of Photography, Inc. v. CollegeBound Network, LLC, 518 F. Supp. 2d 328, 332 (D. Mass. 2007) (holding that defendant's "alleged estimate of a three to seven percent yield was a classic matter of 'estimate or judgment' that could not form the basis for any misrepresentation or fraud claim").

ch. 93A, § 11).  See Yankee Candle Co. v. Bridgewater Candle Co., 259 F.3d 25, 48 (1st Cir.

2001).  Abdallah, however, has not alleged that any of the events relevant to her claim occurred

in Massachusetts.  To the contrary, Abdallah alleges that the alleged fraud occurred, and that she

and the other Factory workers were injured, in France.  See, e.g., Compl. ¶¶ 1, 5, 28-37.

Accordingly, the Court should dismiss her Chapter 93A claim.  See Kuwaiti Danish Computer

Co., 438 Mass. at 473; Travelers Supply, Inc. v. Hilton Head Labs., Inc., 2008 U.S. Dist. LEXIS

106698, at *22 (D. Mass. Dec. 23, 2008) (Neiman, M.J.) (granting motion to dismiss Chapter

93A claim because the relevant events occurred in South Carolina, not Massachusetts); Weber v.

Sanborn, 502 F. Supp. 2d 197, 199-200 (D. Mass. 2007) (granting motion for judgment on the

pleadings because "[t]he events that gave rise to this lawsuit are centered around the planning

and development of property in New Hampshire, by New Hampshire and New Jersey

residents").

Second, even if the Court concludes that Chapter 93A could somehow be applied to

events that occurred in France, Abdallah's claim still should be dismissed because it arises out of

an employment relationship.  See Bolen v. Paragon Plastics, Inc., 754 F. Supp. 221, 227 (D.

Mass. 1990) ("It is unequivocally established that disputes between employers and employees

fall outside the scope of" Chapter 93A); Manning v. Zuckerman, 388 Mass. 8, 14-15 (1983)

("Disputes arising out of the employment relationship between an employer and an employee are

not cognizable under c. 93A").  By seeking to hold Bain Capital liable for the actions of

Samsonite and HB Group, and recoup French severance benefits, Abdallah effectively is arguing

that Bain Capital was her employer.  See, e.g., Compl. ¶¶ 7, 13, 29, 76-81.  Therefore, her claims

arise out of the employment relationship and are not cognizable under Chapter 93A.  See

Manning, 388 Mass. at 14-15 (holding that an employee's claims against his employer and the

employer's sole shareholder fall outside the scope of Chapter 93A).

Therefore, the Court should dismiss Count III of Abdallah's Complaint.

## IV.    CONCLUSION

For the reasons discussed above, the Court should dismiss all of Abdallah's claims against defendant Bain Capital, LLC because, even if all of the facts she alleges are true, Abdallah  fails to state any actionable claim against Bain Capital, LLC as a matter of law.

Respectfully submitted,

BAIN CAPITAL, LLC

By its attorneys,

/s/ Christopher B. Kaczmarek
David C. Casey (BBO No. 077260)
Christopher B. Kaczmarek (BBO No. 647085)
Jeanne M. Barber (BBO No. 678385)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA  02110
Phone 617.378.6000
Fax 617.737.0052
dcasey@littler.com
ckaczmarek@littler.com
December 5, 2011                        jbarber@littler.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December, 2011, a true and accurate copy of the foregoing Defendant's Memorandum in Support of Defendant Bain Capital, LLC's Motion to Dismiss, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Christopher B. Kaczmarek
Christopher B. Kaczmarek