UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MURIELLE ABDALLAH, *Individually and on*
*behalf of all other persons similarly situated,*

               Plaintiff,

      v.

BAIN CAPITAL LLC,

               Defendant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Civil Action No. 11-11904-JLT

MEMORANDUM AND ORDER

July 24, 2012

TAURO, J.

I.      Introduction

    This case stems from the purchase of a majority interest in Samsonite by an investor pool that included Defendant Bain Capital, LLC ("Bain"). After the purchase of Samsonite, a factory owned by Samsonite in Hénin-Beaumont, France was sold to HB Group and was subsequently shuttered. Plaintiff Murielle Abdallah filed her Class Action Complaint [#1] against Defendant Bain on November 4, 2011 alleging fraud, tortious interference with employment agreements, violation of Mass. Gen. Laws Ch. 93A §2(a), and unjust enrichment. Currently before the court is Defendant Bain's Motion to Dismiss [#9]. For the reasons stated below, Bain's Motion to Dismiss is ALLOWED.

II.     Background[1]

    In 2004, an investors' pool consisting of Defendant Bain, Ares Management, and Ontario

---

[1] Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Class Action Complaint [#1], Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

Teacher Pension Funds purchased approximately eighty-five percent of Samsonite's outstanding shares for $8 million.[2]   Bain "was the main and active participant of [the] investors' pool . . . ."[3]   After acquiring a majority interest in Samsonite, Bain appointed Marcello Botolli as the new CEO of Samsonite.[4]

At the time of the acquisition, Samsonite owned and operated a luggage factory in Hénin-Beaumont, France.[4]   Plaintiff Murielle Abdallah worked at this factory.[5]   In 2005, HB Group, owned and operated by Jean-Jacques Aurel, developed a plan to take over the factory and convert production from Samsonite luggage to solar panels and unbranded luggage.[6]   Bain brought Aurel to Samsonite, and Patrick Lebreton, a Bain executive, attended "every important meeting between Samsonite and Aurel."[7]   Under the take-over plan, Samsonite created a wholly-owned subsidiary that consisted of the factory's business activities and assets.[8]

The factory was then sold to HB Group in either July or August of 2005.[9]   After the sale, the factory operated at a loss, and roughly one year later the factory filed for bankruptcy.[5]   The Tribunal de Commerce of Paris, France ordered the judicial liquidation of the factory on February 15, 2007.[6]

Plaintiff alleges that Bain arranged the sale of the factory to HB Group in order to avoid Samsonite paying the costs associated with a collective redundancy plan, which would have been required had Samsonite closed the factory.[7]   According to Abdallah, under the French Labor Code, any entity employing at least fifty workers that seeks to terminate the employment of at

---

[2] Class Action Compl. ¶ 19 [#1].
[3] Compl. ¶ 19.
[4] Compl. ¶ 21.
[5] Compl. ¶¶ 52-53.
[6] Compl. ¶ 53.
[7] Compl. ¶ 50.

least ten workers must implement a collective redundancy plan.[8]  Such a plan is "designed to assist the workers facing termination, including but not limited to training seminars and conferences, financial and logistical aid to move to a different location to be reallocated to a new position, and psychological support to help the workers during the transition period."[9]  Abdallah estimates that had Samsonite shuttered the factory, a collective redundancy plan would have cost it around $75 million.[10]  By selling the factory to HB Group, Samsonite avoided paying for such a plan, and Bain was able to sell its shares of Samsonite stock for greater profit.[11]

The factory workers filed a lawsuit in France against Samsonite, HB Group, Bain Capital, Ares Management, and the Ontario Teacher's Pension Plan.[12]  On June 24, 2008, the Tribunal de Grande Instance "declared the transfer between Samsonite and HB Group null and void as fraudulent[,]" but dismissed the claims against the members of the investors' pool for lack of evidence.[13]  The factory workers also filed a separate suit against Samsonite for illegal termination in France.  On December 14, 2008, the Conseil des Prud'hommes of Lens, France found in favor of the workers.[14]

On November 4, 2011, Abdallah filed her Class Action Complaint [#1] individually and on behalf of all other persons similarly situated—the workers from the factory in Hénin-Beaumont, France—in the United States District Court for the District of Massachusetts.  The complaint lists the following four causes of action against Bain: (1) fraud; (2) tortious interference with the employment agreements; (3) violation of Mass. Gen. Laws ch. 93A § 2(a);

---

[8] Compl. ¶ 22.
[9] Compl. ¶ 24.
[10] Compl. ¶ 36.
[11] Compl. ¶¶ 50, 55.
[12] Compl. ¶ 57.
[13] Compl. ¶ 57.
[14] Compl. ¶¶ 59-60.

and (4) unjust enrichment, restitution, and constructive trust. Abdallah states that new evidence

has recently come to light demonstrating that Bain ordered Lebreton to attend meetings between

Samsonite and Aurel, and that Samsonite's representative at those meetings "repeatedly sought

Lebreton's assent to the main points of the scheme."[15]  Bain filed Defendant Bain Capital, LLC's

Motion to Dismiss [#9] on December 5, 2011.  Abdallah filed Plaintiff's Memorandum of Law

in Opposition to Defendant's Motion to Dismiss [#12] on December 19, 2011, and Bain filed

Reply Memorandum of Defendant Bain Capital, LLC in Support of its Motion to Dismiss [#14]

on January 6, 2012.

III.    Discussion

        A.      Standard of Review

        A district court should not dismiss a complaint under Fed. R. Civ. P. 12(b)(6) "if the

complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plaint statement of the claim

showing that the pleader is entitled to relief.'"[16]  In order for a complaint to withstand a motion

to dismiss, however, it "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face . . . .'"[17]  The court accepts as true all factual allegations

stated in the complaint.[18]  The court should, nevertheless, disregard all legal conclusions that the

plaintiff presents as facts.[19]  The claim survives the motion to dismiss if the factual allegations

alone "allow[] the court to draw the reasonable inference that the defendant is liable for the

---

[15] Compl. ¶ 29.

[16] Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)).

[17] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[18] Ocasio-Hernandez, 640 F.3d at 12 ("Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible.").

[19] See Iqbal, 556 U.S. at 678.

misconduct."[20] A complaint that only "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief[,]'"[21] and should be dismissed. In addition, when a plaintiff alleges fraud, Fed. R. Civ. P. 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake."[22]

When a motion to dismiss is based on the argument that the claims are time-barred, in order to prevail, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude."[23] Although in most cases, "the question [of] when a plaintiff knew or should have known of its cause of action is one of fact that will be decided by the trier of fact[,]"[24] the case is appropriate for dismissal if no set of facts would entitle the plaintiff to relief.[25]

B.      Statute of Limitations

In this case, Bain's motion to dismiss is based on the argument that each of Abdallah's four claims is time barred. First, Abdallah brings three common law claims: fraud (Count I), tortious interference with the employment agreements (Count II); and unjust enrichment, restitution and constructive trust (Count IV). Under Massachusetts state law, each one of these claims is subject to a three-year statute of limitations from the date upon which the cause of

---

[20] Id.; see Sepulveda-Villarini v. Dep't. of Educ., 628 F.3d 25, 29 (1st Cir. 2010) ("The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

[21] Ocasio-Hernandez, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

[22] Fed. R. Civ. P. 9(b).

[23] Nat'l Assoc. of Gov't Emps. v. Mulligan, No. 11-11123-NMG, 2012 WL 1242308, at *3 (D. Mass. March 30, 2012).

[24] Taygeta Corp. v. Varian Assocs., Inc., 763 N.E.2d 1053, 1063 (Mass. 2002).

[25] See Iqbal, 556 U.S. at 678.

action accrues.[26]  Second, Abdallah's claim of violation of Mass. Gen. Laws ch. 93A is subject to a four-year statute of limitations from the date the cause of action accrues.[27]

A cause of action typically accrues at the time the plaintiff suffers the underlying injury.[28]  Abdallah has proposed three separate doctrines for tolling the statute of limitations until a later date: (1) the discovery rule; (2) Mass. Gen. Laws ch. 260, § 12; and (3) equitable tolling.[29]  First, the discovery rule tolls the running of the statute of limitations until "a plaintiff 'knew of should have known of the alleged injury.'"[30]  Stated another way: "Under the discovery rule, a cause of action accrues when a person (1) knows or has sufficient notice that s/he was harmed; and (2) knows or has sufficient notice of the cause of harm."[31]  The burden is upon the plaintiff to prove "both the actual lack of knowledge and the objective reasonableness of that lack of knowledge

---

[26] Mass. Gen. Laws ch. 260, § 2A ("Except as otherwise provided, actions of tort, actions of contract to recover for personal injuries, and actions of replevin, shall be commenced only within three years next after the cause of action accrues."); see also LeGoff v. Trustees of Boston Univ., 23 F. Supp. 2d 120, 129 (D. Mass. 1998) (stating that tortious interference with advantageous relationship is subject to Mass. Gen. Laws ch. 260, § 2A's three-year statute of limitations); Cambridge Literary Props., Ltd. v. W. Goebel Pozellanfabrik G.m.b.H. & Co. KG, 448 F. Supp. 2d 244, 263 (D. Mass. 2006) (finding that Mass. Gen. Laws ch. 260, § 2A's three-year statute of limitations applies to a claims of unjust enrichment not based on breach of contract); Okoli v. Okoli, 963 N.E.2d 737, 746 (Mass. App. Ct. 2012) (stating that fraud is subject to Mass. Gen. Laws ch. 260, § 2A's three-year statue of limitations).

[27] Mass. Gen. Laws. Ch. 260, § 5A.

[28] See Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991); Joseph A. Fortin Const., Inc. v. Mass. Hous. Fin. Agency, 392 Mass. 440, 442 (1984) ("[I]t is well-settled that causes of action in tort generally accrue under G.L. c. 260, § 2A, at the time the plaintiff is injured.).

[29] In its Reply Memorandum of Defendant Bain Capital, LLC in Support of its Motion to Dismiss [#14], Bain responds to Abdallah's argument as if she asserted equitable estoppel, and not equitable tolling.  Reply, at 3.  The two are distinct doctrines with different bases for invocation.  See Dickow v. United States, 740 F. Supp. 2d 231, 238 (D. Mass. 2010).  Since Abdallah did not invoke equitable estoppel, the court will not discuss it.

[30] Max-Planck-Gesellschaft Zur Forderung Der Wissenchaften E.V. v. Whitehead Inst. for Biomedical Research, No. 09-11116-PBS, 2010 WL 2428690, at *2 (D. Mass. June 11, 2010) (quoting Lambert v. Fleet Nat. Bank, 449 Mass. 119, 126 (2007)); see also Koe v. Mercer, 450 Mass. 97, 101 (2007) ("This court has developed a discovery rule to determine when the statute of limitations begins to run in circumstances where the plaintiff did not know or could not reasonably have known that he or she may have been harmed by the conduct of another.").

[31] Lareau v. Page, 39 F.3d 384, 388 (1st Cir. 1994).

during the tolling period."[32]  For the discovery rule, "[t]he important point is that the statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury."[33]

The amount of notice necessary to commence the running of the statute of limitations is likely notice of the cause of injury.[34]  Armed with such "notice, the potential litigant has the duty to discover from the legal, scientific, and medical communities whether the theory of causation is supportable and whether it supports a legal claim."[35]  For example, in Curry v. Simon, a medical malpractice case, the Massachusetts Appeals Court determined that under the discovery rule, "[t]here is no requirement that a plaintiff have notice that the defendant was actually responsible for the injury, only that he or she have knowledge or sufficient notice that the medical care given by the defendant may have caused the injury."[36]  The court focused its reasoning on the fact that that discovery rule was adopted to toll the statute of limitations when the harm was "inherently unknowable" at the time the tortious conduct occurred.[37]  Because the plaintiff in Curry knew that the defendants treated the plaintiff and knew of the injury when it occurred, the plaintiff was on notice at the time of injury "to investigate with medical professionals whether the defendants' treatment in any way contributed to that injury."[38]

Second, in certain instances, under Massachusetts law, a statute of limitations may also be tolled for fraudulent concealment.  Mass. Gen. Laws ch. 260, § 12 reads: "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the

---

[32] D.B. Zwirin Special Opportunities Fund L.P. v. Mehrotra, No. 10-10979, 2001 WL 317752, at *1 (D. Mass. Jan. 31, 2011).
[33] Bowen v. Eli Lilly & Co., 408 Mass. 204, 207 (1990), quoted in Page, 39 F.3d at 388.
[34] Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (1st Cir. 1983).
[35] Id.
[36] No. 05-P-628, 2006 WL 1599812 , at *1 (Mass. App. Ct. June 12, 2006).
[37] Id.
[38] Id., at *2.

person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." When no fiduciary duty exists between the parties, "active fraud is ordinarily required to prove fraudulent concealment."[39]  Active fraud requires an affirmative action taken with the intent to conceal the cause of action.[40]  The doctrine of fraudulent concealment is subject to the heightened pleading standard for fraud presented in Fed. R. Civ. P. 9(b),[41] and the complaint should include the time, place, and content of the fraudulent concealment.[42]

Lastly, under the doctrine of equitable tolling a statute of limitations is tolled "if a plaintiff exercising reasonable diligence could not have discovered information essential to the suit."[43]  The court will hold "[a] party attempting to invoke" equitable tolling "to a duty of reasonable inquiry."[44]  To invoke the doctrine, a party "must at the very least show that the information *could not* have been found by a timely diligent inquiry . . . ."[45]  The First Circuit has stated that the doctrine should be invoked sparingly in order "[t]o preserve the usefulness of statutes of limitations as rules of law . . . ."[46]  It should be invoked only when circumstances beyond the plaintiff's control made it impossible for the Plaintiff to file within the statute of limitations.[47]

Here, Abdallah suffered two injuries: she lost her job at the factory in Hénin-Beaumont,

[39] Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 376-77 (2008).
[40] Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 175 (1992).
[41] See Epstein v. C.R. Bard, Inc., 460 F.3d 183, 189-90 (1st Cir. 2006).
[42] Id. at 190.
[43] Bernier v. Upjohn Co., 144 F.3d 178, 180 (1st Cir. 1998).
[44] Protective Life Ins. Co. v. Sullivan, 425 Mass. 615, 631 (1997).
[45] Bernier, 144 F.3d at 180.
[46] Neverson v. Farquharson, 366 F.3d 32, 42 (1st Cir. 2004).
[47] Id.

France,[48] and she did not receive the benefits of a collective redundancy plan.[49]  Abdallah's

injuries occurred no later than February 15, 2007, the day that "the Tribunal de Commerce of

Paris, France, order the judicial liquidation of the factory."[50]  Abdallah filed her complaint in this

case on November 4, 2011, well after the statute of limitations for any of her four claims.

Abdallah argues that the court should apply the discovery rule, Mass. Gen. Laws ch. 260, § 12,

or equitable estoppel in order to allow her to proceed with her cause of action.

Abdallah is not entitled to application of the discovery rule.  As stated above, the rule

tolls the commencement of the statute of limitations until the plaintiff knew or reasonably should

have known of the alleged harm.[51]  Abdallah's injuries were evident at the time that they

occurred.  It is also likely that Abdallah had notice of Bain's involvement as of the date that she

suffered her injuries.[52]  Bain had appointed Botolli the CEO of Samsonite,[53] and introduced

Samsonite to Aurel and HB Group.[54]  Abdallah was on notice and had a "duty to discover . . .

whether the theory of causation" supported a legal claim.[55]

In fact, Abdallah did pursue a legal claim against Bain and other parties in France in

2008.[56]  The aim of that lawsuit was to declare the transfer of the factory to HB Group as null

and void due to fraud.[57]  The lawsuit in France is further evidence that Abdallah knew of her

---

[48] Compl. ¶ 5.
[49] Compl. ¶ 65.
[50] Compl. ¶ 53.  The Class Action Complaint does not state the exact date that Plaintiff's employment was terminated.  Bain uses February 15, 2007 as the date Abdallah's claims accrued.  Def. Bain Capital, LLC's Mot. to Dismiss, at 5.  Plaintiff has not contested this date, and the court sees no reason not to accept it as the last possible accrual date.
[51] Lareau, 39 F.3d at 388.
[52] See Fidler, 714 F.2d at 199.
[53] Compl. ¶ 20.
[54] Compl. ¶ 28.
[55] Fidler, 714 F.2d at 199; see Curry, 2006 WL 1599812, at *2.
[56] Compl. ¶¶ 57-58.
[57] Compl. ¶ 57.

injury and knew that Bain was a likely cause of her injury at the time her employment was terminated. Abdallah, therefore, had a duty to pursue any possible legal causes of action within three years of the date she suffered her injury.

Abdallah cannot rely on Mass. Gen. Laws ch. 260, § 12 to save her claims from accruing on the date of her injury. By the statute's clear language, the party causing the injury must take action to conceal the cause of action from the injured party.[58] Fraudulent concealment is subject to the heightened pleading standard of Fed. R. Civ. P. 9(a).[59] In order to meet this standard, the complaint must provide specifics about the fraudulent concealment.

In her Class Action Complaint, Abdallah states:

> In September 2011, new evidence came to light, demonstrating that Bain specifically mandated Patrick Lebreton . . . , a high-ranking executive of Bain, to attend to every important meeting between Samsonite and Aurel, during which the scheme was formulated and furthered. Over the course of these meetings, Samsonite's representative (with whom Lebreton was well acquainted) repeatedly sought Lebreton's assent to the main points of the scheme.[60]

Abdallah's argues that this evidence, which came to light in 2011, should allow her to apply Mass. Gen. Laws ch. 260, § 12 to her claims. It does not. No where in the Class Action Complaint does Abdallah provide any evidence that Bain concealed Abdallah's cause of action from her until after the tolling of the statute of limitations. The Class Action Complaint is devoid of factual allegations regarding the time, place, and manner of any fraudulent concealment. Although the court does not reach this question at this time, even if the information that came to light in September 2011 were enough to form the basis of a cause of action, there is no evidence that Bain actively concealed this information from Abdallah. Mass.

---

[58] Mass. Gen. Laws ch. 260, § 12; see also Puritan Med. Ctr., Inc., 413 Mass. at 175.
[59] Epstein, 460 F.3d at 189-90.
[60] Compl. ¶ 29.

Gen. Laws ch. 260, § 12 is inapplicable without specific evidence of active fraud by Bain intended to conceal the cause of action from Abdallah.

Lastly, Abdallah seeks to invoke the doctrine of equitable tolling. This doctrine should only be applied when the plaintiff could not have discovered, with reasonable diligence, information that was essential to the cause of action within the statute of limitations.[61] Abdallah argues that the information that came to light in September 2011 provides a basis for equitable tolling. Abdallah has not provided, however, any evidence to demonstrate "that th[is] information *could not* have been found by a timely diligent inquiry . . . ."[62] In her Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Abdallah states: "Due to the depth of the concealment of Bain's actions, the Plaintiff could not discover Bain's involvement unless one within Bain's cabal stepped forward."[63] Even with this statement, Abdallah falls well short of providing facts to demonstrate that a diligent inquiry would not have produced the information discovered in September 2011.

More importantly, Abdallah offers no argument that the information discovered in 2011 is the only information that forms the bases for her causes of action. In other words, for the court to invoke equitable tolling, a doctrine used sparingly, the court would have to find that without the information that came to light in September 2011, Abdallah could not have brought her causes of action in this court. Abdallah has not even attempted to make this argument.

Although determining whether the discovery rule, fraudulent concealment, or equitable tolling should apply in a case is a question of fact to be determined by the finder of fact, the court

---

[61] See Bernier, 144 F.3d 178
[62] Id.
[63] Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, at 7.

can grant a motion to dismiss if no set of facts would entitle the plaintiff to relief.[64]  Here, Abdallah has not offered any facts that justify invoking the discovery rule, Mass. Gen Laws ch. 260, § 12, or equitable estoppel.  For this reason, <u>Defendant Bain Capital, LLC's Motion to Dismiss</u> is ALLOWED.  Plaintiff's <u>Class Action Complaint</u> is dismissed without prejudice.  If additional facts regarding the information that came to light in September 2011 would justify invoking any of the doctrines discussed above, Abdallah may refile a complaint that includes specifics regarding the doctrine she wishes to invoke.

IV.    <u>Order</u>

For the reasons states above, <u>Defendant Bain Capital, LLC's Motion to Dismiss</u> [#9] is ALLOWED.  Plaintiff's <u>Class Action Complaint</u> [#1] is DISMISSED WITHOUT PREJUDICE.


IT IS SO ORDERED.

_____/s/ Joseph L. Tauro_____
United States District Judge

---

[64] <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.